RECEIVED
USDC, CLERK, CHARLESTON, SC

2008 FEB 29 A 10: 49

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael A. Moore, #11882-171, ) | C.A. No. 2:07-0180-MBS-RSC |
| Plaintiff, ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| NFN Smith, Captain at ) Charleston County Detention ) Center; and Medical Staff at ) Charleston County Detention ) Center, sued in their official) and individual capacities, ) | |
| Defendants. ) | |

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by a former pretrial detainee, now a prisoner, proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' summary judgment motion. 28 U.S.C. § 636(b).

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

On January 19, 2007, the plaintiff, Michael A. Moore, sued Captain Smith and "Medical Staff at Charleston County Detention Center". Moore filed an amended complaint on February 15, 2007. Moore sued the defendants both in their individual and official capacities. Moore alleged that the defendants violated his constitutionally protected rights, as well as, rights under state law in failing to provide him proper medical care. He seeks such care and five hundred thousand dollars ($500,000.00).

On April 13, 2007, defendant "Medical Staff at Charleston County Detention Center" filed a motion to dismiss for failure of service because it was not served with the original or the amended complaint. The amended complaint was sent by regular mail to the Charleston County Detention Center. On April 16, 2007, Plaintiff was provided copies of the defendants' motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

On May 4, 2007, Plaintiff filed an opposition to the defendants' motion, and on May 21, 2007, the plaintiff filed another opposition in which he conceded that he had improperly mailed a copy of the summons and complaint to the defendants' attorney. He requested that he be allowed to fill out Marshal's form 285 so that proper service could be affected. He also asked

to substitute "Unknown Agents of the Charleston County Detention Center" for the defendant "Medical Staff", pending discovery of the proper identities of the parties. He also withdrew his prayer for injunctive relief.

On July 3, 2007, the undersigned United States Magistrate Judge issue a second order authorizing service of process by the Clerk. The Clerk reissued the Summons and Complaint with Restricted Access and forwarded them to the Marshal. The Marshal mailed the Summons and Complaint by registered and certified mail stamped "Restricted Delivery" to the "Medical Staff" at the Charleston County Detention Center and to Captain Smith. E. Avenel accepted the delivery on July 19, 2007. Captain Smith signed for his copy of the Summons and Complaint.

All parties answered the complaint and all defendants asserted that they had not been properly served. On November 13, 2007, defendants Medical Staff and Captain Smith filed motions for summary judgment. Medical Staff also argued that it had never been properly served. The defendants filed the plaintiff's CCDC medical records and various affidavits of CCDC officers and Defendant Smith.

On November 14, 2007, Plaintiff was provided copies of the defendants' motions and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar

to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).

On November 21, 2007, Plaintiff filed a motion for leave to file a second amended complaint, to add nine new defendants, three of whom were "unknown parties", and to assert "torts of negligence and medical malpractice," to appoint counsel, and to reopen discovery. The motion was denied on November 27, 2007. On December 18, 2007, Plaintiff filed an opposition to the defendants' summary judgment motions. Hence, it appears consideration of the motions is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. <u>Id.</u>, 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of

evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

**LAW GOVERNING THE RIGHT OF PRETRIAL DETAINEES TO MEDICAL CARE**

Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See, City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 103 S.Ct. 2979 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under

the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). See, Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

In order to establish a violation of the Eighth Amendment for inadequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321 (1991). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citations omitted). Mere negligence or malpractice does not violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Therefore, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Miltier, 896 F.2d at 851. Furthermore, the type and amount of medical care an inmate receives is discretionary. See, Brown v. Thompson, 868 F.Supp. 326 (S.D.Ga. 1994). The mere fact that a prisoner may believe he had a more serious injury or that he

required better treatment does not establish a constitutional violation. See, e.g., Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817-18 (1st Cir. 1988). Thus disagreements between an inmate and a physician over the inmate's proper medical care do not state a civil rights claim unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Additionally, in the context of alleged indifference to serious medical needs, in order to state a § 1983 claim, the plaintiff must allege that he suffered specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and that conduct. Rizzo v. Goode, 423 U.S. 362, 371-72, 96 S.Ct. 598, (1976).

Whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry. First, the plaintiff must allege a deprivation of medical care that was sufficiently serious, the objective component, and second, allege that there existed a "sufficiently culpable state of mind" by the defendant, the subjective component. Seiter, 501 U.S. at 298. The first issue, the objective element, is whether the plaintiff has pled the deprivation of a serious medical need.

7

That element can be further broken down into two components: (1) a serious medical need and (2) mistreatment or nontreatment of that need.

While there is no clear definition of what constitutes a serious medical need, the Eighth Amendment embraces the treatment of medical conditions which may cause future health problems. Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475 (1993)). A medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" or if denial of or a delay in treatment causes the inmate "to suffer a life-long handicap or permanent loss." Monmouth Co. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Although expert exploration may be required to aid the jury in determining the threshold standard of medical care, a jury may find, without further expert testimony, that certain actions fell so far below enunciated standard that they constituted gross indifference actionable under Section 1983. Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990). Thus, summary judgment may not properly be based on an absence of a statement from an expert that the care given was grossly negligent when inferences drawn from the record could support such a finding. Id.

The second element, the subjective component, requires a

showing that the defendant's actions were wanton. To be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need, or risk of harm. Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Miltier, 896 F.2d at 851. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to him or which would be apparent to a reasonable person in his position. See, id. at 852-53 (deliberate indifference to cardiac condition); Cooper v. Dyke, 814 F.2d 941, 945-46 (4th Cir. 1987) (obvious risk created by gunshot wound); Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986) (condition escalated into obvious risk); Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (delay in treating an obviously broken arm). A plaintiff must prove that the defendant was aware of facts showing a substantial risk of harm and also drew the inference that a substantial risk of harm existed. See, Johnson v. Quinones, 145 F.3d 164, 167-68 (4th Cir. 1998) (although doctors knew of symptoms, there was no evidence that doctors knew of the medical condition underlying the symptoms).

### FACTS

The facts either undisputed or according to the plaintiff as the non-moving party and all reasonable inferences therefrom are as follow.

9

On January 28, 2005, Plaintiff was working as an inmate helper at the CCDC where he was confined as a pretrial detainee. Plaintiff, in his verified complaint, indicated that while he was moving a full clothing cart with another inmate and Officer Wright, he fell forward and his back "popped." Plaintiff told Wright he had hurt his back, but did not want to go to Medical because he wanted to see how it felt in the morning. The next morning Plaintiff signed up for sick call because he was having back pain.

On January 31, 2005, Plaintiff was seen by Physician Assistant Koy Baker to whom Plaintiff complained of back pain. An exam was conducted and revealed that Plaintiff had a full range of motion, and no edema, deformity or discoloration was noted. He was able to heel to toe walk with no vertebral tenderness. Plaintiff was prescribed Robaxin 1000 mg BID and Motrin 600 mg BID. Plaintiff's back was x-rayed by Lowcountry Mobile X-Ray, and the x-ray was reviewed by Dr. Robert Steinberg. The findings of the L-spine were as follows: History: pain & tingling after heavy lifting 5 days ago; Narrowing of L5-S1 disc space; stop working, no lifting over 8 lbs for 6 wks, rest and ice." (Def. ex. CCS 059). Further notes indicate, "Examination: Lumbar spine Diagnosis: Suspected narrowing of L5-S1 disc space. Comment: No spot film of the L-spine is submitted. There are five lumbar type vertebral bodies. The vertebral body heights

are well maintained. There appears to be narrowing of the L5-S1 disc space. The remaining disc space heights are adequately preserved. There is straightening of the normal lumbar lordosis. The SI joints are normal. No old films are available for comparison." (Def. ex. CCS 060). Plaintiff was advised to stop working, not to lift anything over eight pounds for six weeks, to apply ice and to rest.

On March 1, 2005, Plaintiff was seen for migraine headaches of ten years duration and was prescribed medication. He was seen by a nurse on March 31, 2005, for back complaints. Examination revealed unimpaired range of motion, no weakness, no numbness, and no radiation of pain. The nurse referred him for further evaluation as Plaintiff requested.

On April 1, 2005, another full assessment was done by P. A. Baker based on the Plaintiff's complaints of lower back pain. The medical records reveal Plaintiff continued to complain of numbness and tingling radiating and stated he could not sit or stand for any period of time. The exam revealed no weakness, no numbness in legs, no bowel/bladder dysfunction, and no gait impairment. An assessment of the back revealed no deformity with full range of motion, but diffuse mild lumbar tenderness. Plaintiff was prescribed Motrin 600 mg PO bid for 30 days and Imipramine to start at 25mg and titrate up. Plaintiff was referred for a MRI.

11

On April 28, 2005, a nursing assessment flow sheet showed Plaintiff complained that his back was painful and that he wanted "stronger meds." He was examined and had a normal gait, posture, and movement, as well as a full range of motion and no incontinence.

On June 14, 2005, Plaintiff was transported to the Medical University of South Carolina where a MRI without contrast was performed. A radiology consultation was preformed by Dr. Jay Kavanaugh who found that overall there were no significant compressive sequelae, but there was "a desiccated disc at L4-5 with broad based disc bulge, ligamentum flavum hypertrophy, and facet degenerative changes causing bilateral neuron foraminal stenosis, right greater than left. There is abnormal signal within the exiting nerve root at this level, concerning for compressive radiculopathy. Broad based disc bulge with facet osteoarthritic changes at L5-S1 without evidence of significant compressive sequelae. Diffuse fatty bone marrow replacement throughout the lumbar spine." (Def. ex. CCA 061-062). Importantly there was "no evidence of trauma." (Def. ex. CCA 062).

Plaintiff was seen on May 31, 2005, June 1, 2005, and June 19, 2005, for digestive problems. On June 22, 2005, Plaintiff was seen and was complaining of back and stomach pain. At that

time, another full evaluation was completed and he was given Motrin 600 mg. po bid. and Elavil.

On July 27, 2005, Plaintiff's Motrin prescription was renewed for ninety days. Thereafter, in October 2005, Plaintiff was transferred to the Orangeburg County Detention Center. It appears that at some point he was jailed again at the CCDC before he was ultimately incarcerated at the Federal Correctional Complex, Coleman, Florida.

Plaintiff's amended complaint concerns his medical care up until the MRI was taken in June 2005 and Plaintiff relies on a grievance he filed at CCDC "about" June 2005. (Pl. aff. filed in opposition to the defendants' motions for summary judgment).

## **DISCUSSION**

A review of the record and relevant case law reveals that lack of proper service, noncompliance with the exhaustion provisions of the Prison Litigation Reform Act, 42 U.S.C. § 1997(a), the naming of a nonsuable defendant, Medical Services, and a defendant, Captain Smith, upon whom Plaintiff seeks to impose impermissible vicarious respondeat superior liability, are each alone sufficient to end this action. Nonetheless, since the defendants and the plaintiff have addressed the merits of whether Plaintiff was provided constitutionally adequate medical care, it appears appropriate to review the claim on the merits.

Plaintiff has wholly failed to establish either the

subjective or objective components of a claim of constitutionally infirm medical treatment. Plaintiff's undisputed medical records, show that Plaintiff has been given a plethora of medical care for his back and other complaints. Plaintiff's medical records indicate that he has been seen on numerous occasions by medical staff of the CCDC where he was housed. These records also indicate that Plaintiff's medical complaints have been extensively documented, assessed, and treated. Specifically, he received x-rays and was transported to the Medical University for a MRI and assessment by a radiology specialist on staff at the Medical University. He has been repeatedly examined by nurses, physicians, and physician's assistants, prescribed and renewed prescriptions for drugs for his complaints, given treatment plans, and removed from his job which required lifting and carrying. Despite complaints by the Plaintiff, that he was not treated well or treated at all by the defendants, the undisputed evidence clearly indicates the opposite.

Further, the defendants affied that they were never deliberately indifferent to any serious medical needs of the plaintiff, and the plaintiff's medical chart, when viewed in its totality concerning the chronology and extent of medical care, demonstrates no evidence of deliberate indifference. Plaintiff has failed to establish a genuine issue of material fact showing

a constitutional deprivation, and judgment as a matter of law should be granted to all defendants.

Further to the extent Plaintiff alleges malpractice, no § 1983 claim lies. Even if there were evidence of negligence or malpractice in medical services, without more, no constitutional cause of action would arise. Moreover, medical malpractice would not become a constitutional issue merely because the plaintiff is a prisoner. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

Additionally, since Plaintiff has failed to present evidence that the actions of any defendant violated his constitutional rights, qualified immunity is available to the defendants in their individual capacities to the extent Plaintiff seeks damages.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motions for summary judgment be granted and this matter ended.

                            Respectfully Submitted,

                            Robert S. Carr
                            United States Magistrate Judge

Charleston, South Carolina

February 29, 2008

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).